# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5798-11T1

R.S.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL ASSISTANCE
AND HEALTH SERVICES AND
UNION COUNTY BOARD OF
SOCIAL SERVICES,

     Respondents-Respondents.

---

> **APPROVED FOR PUBLICATION**
>
> **January 23, 2014**
>
> **APPELLATE DIVISION**

Argued October 2, 2013 — Decided January 23, 2014

Before Judges Sapp-Peterson,[1] Lihotz and Hoffman.

On appeal from the Department of Human Services, Division of Medical Assistance and Health Services, and Union County Board of Social Services.

Eugene S. Rosner argued the cause for appellant (Fink, Rosner, Ershow-Levenberg, LLC, attorneys; Mr. Rosner, on the brief).

Kay R. Ehrenkrantz, Deputy Attorney General, argued the cause for respondent Division of Medical Assistance and Health Services (John J. Hoffman, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Ehrenkrantz, on the brief).

---

[1] Judge Sapp-Peterson did not participate in oral argument.  She joins the opinion with the consent of counsel.  R. 2:13-2(b).

Respondent Union County Board of Social Services has not filed a brief.

The opinion of the court was delivered by

HOFFMAN, J.A.D.

In this appeal, we are asked once again to address "the continuing tension between the State's effort to conserve Medicaid resources for the truly needy and the legal ability of institutionalized Medicaid recipients to shelter income for the benefit of their non-institutionalized spouses." H.K. v. Div. of Med. Assistance & Health Servs., 379 N.J. Super. 321, 323 (App. Div. 2005). Petitioner R.S. appeals from a final agency decision of the Division of Medical Assistance and Health Services (Division) finding that the community spouse monthly income allowance (CSMIA) for his wife, D.S., should be calculated in accordance with 42 U.S.C.A. § 1396r-5(e)(2)(B) and N.J.A.C. 10:71-5.7(e), rather than pursuant to a separate maintenance order entered by the Family Part. Following our review, we conclude the Division, when determining the institutionalized spouse's obligation for his nursing home care, is not bound to abide by the terms of a Family Part non-dissolution separate maintenance order, entered in a non-contested proceeding, without notice to the Division, because the Order was designed to circumvent the regulations governing

the CSMIA. We affirm, concluding the Order "transgressed the permissible limits of Medicaid planning[.]" H.K., supra 379 N.J. Super. at 323.

I.

R.S. and D.S. were married on September 9, 1978. As a result of physical and mental ailments, R.S. began residing at the Kessler Rehabilitation Center on November 1, 2010. Thereafter, R.S. moved to the Cornell Hall Nursing and Rehabilitation Center for further rehabilitation and long-term custodial care, which he will require for the rest of his life. Since November 1, 2010, R.S. and D.S. have been living separately, with D.S continuing to reside in the marital home.

On November 4, 2010, D.S. filed a complaint for separate maintenance wherein she requested a judgment compelling R.S. to pay her support equaling the amount of R.S.'s Social Security income, asserting R.S.'s income is necessary for D.S. "to meet her basic expenses to remain in the marital home . . . [and] maintain a reasonable approximation of the marital standard of living enjoyed prior to the separation of the parties." In the complaint, D.S. claimed R.S. had "separated himself from [D.S.] and ha[d] refused and neglected to support [D.S.] within the meaning of N.J.S.A. 2A:34-24." D.S. attached to her complaint a Family Part case information statement (CIS) detailing her

income, expenses, assets and liabilities, in which she disclosed she was employed and earning an annual salary of $22,679.

On November 24, 2010, R.S.'s attorney accepted service of the complaint. Neither the Union County Board of Social Services (Board) nor the Division received notice of the Family Part proceedings, even though D.S.'s complaint stated she was "about to file a[n] application for . . . Medicaid benefits pursuant N.J.S.A. 30:4D et seq. and N.J.A.C. 10:71 et seq." on R.S.'s behalf, and further alleged that R.S. "meets the financial and medical criteria for eligibility."

R.S. did not oppose his wife's action nor is there evidence a hearing was held. An order issued by the court on December 10, 2010 required R.S. to pay D.S. "an amount equal to [R.S.'s] net Social Security benefit; that is, after the deduction of the Medicare premium, supplemental insurance premium and the Medicaid 'Personal Needs Allowance,' for her support." The order was retroactive to November 2010. Because D.S. inadvertently omitted income R.S. received from a worker's compensation award, on March 30, 2011, the judge issued an amended order (the Order) including this additional income as part of R.S.'s support obligation. Therefore, the Order required R.S. to pay D.S. $3460.20 per month in spousal support, consisting of his monthly social security and worker's

compensation income benefits, less the designated offsets for R.S.'s personal allowance and health insurance premiums.

On May 12, 2011, the Board received a Medicaid application for R.S.[2] On September 20, 2011, the Board determined R.S. eligible for Medicaid as a "medically needy" recipient, effective April 1, 2011. The Board did not recognize the Order in its "Statement of Available Income for Medicaid Payment." Rather, the Board decided, D.S. was entitled to a CSMIA[3] of $1514.93 per month, allowing her to meet her minimum monthly maintenance needs amount (MMMNA), as calculated pursuant to N.J.A.C. 10:71-5.7(c).

R.S. appealed the Board's determination at a hearing before the Office of Administrative Law (OAL), claiming that N.J.A.C. 10:71-5.7(f) required the allocation of R.S.'s income consistent with the Order rather than in accordance with the CSMIA calculated by the Board. R.S. further sought an award of

---

[2] Appellant's brief indicates that D.S. made the application on R.S.'s behalf; however, the application bears the signature of Irene Quesada, designated as R.S.'s "authorized representative." According to respondent's brief, Ms. Quesada is a legal assistant employed by Fink, Rosner, Ershow-Levenberg, LLC, who represented D.S. in the initial family court matter and R.S. on this appeal.

[3] 42 U.S.C.A. § 1396r(D)(2) uses the term "community spouse monthly income allowance," while N.J.A.C. 10-71:5.7(c) refers to this amount as "community spouse's maintenance deduction." For purposes of clarity and consistency, we use the former (CSMIA).

attorney's fees and costs under 42 U.S.C.A. §§ 1983 and 1988, alleging the Board's findings, as adopted by the Division, denied his rights under federal and state law.

Administrative Law Judge Caridad Rigo (ALJ) rejected R.S.'s contentions in an initial decision issued on April 5, 2012. The ALJ noted the Board was not provided notice of the Family Part proceedings nor did it have an opportunity to be heard; further, "the issue in Superior Court was not the community spousal support in relation to Medicaid[,] but rather spousal support in relation to the Family Law statutes and regulations." Relying on H.K., Judge Rigo found the appeal represented an attempt to use a support order "to circumvent the Medicaid regulations concerning . . . spousal allowance[,]" and concluded "this case does not exhibit the requisite medical and financial duress or any exceptional circumstances where an increase of spousal maintenance allowance is required [or] justified."

On July 2, 2012, the Division adopted the ALJ's decision agreeing D.S.'s "ordinary and regular expenses" did not meet the "exceptional circumstances threshold" required for an increase in the CSMIA, pursuant to 42 U.S.C.A. § 1396r-5(e)(2)(B). In declining to give effect to the amended support order, the Division noted:

> A review of the record indicates that the
> wife's action in family court was not

> adversarial and was chosen to avoid following the Medicaid spousal impoverishment rules so as to "protect" income for her monthly expenses such as: $150 for hair care or $1,800 yearly; . . . $50 for unspecified contributions or $600 a year; $100 for life insurance or $1,200 a year.

After reviewing the legislative history of 42 U.S.C.A. § 1396r-5(d)(5), the Division emphasized that R.S.'s wife "has not claimed any 'special circumstances' in this matter or before the family court" that would warrant enforcement of the amended support order. Appellant appeals from this final agency decision.

## II.

Established by Title XIX of the Social Security Act, the Medicaid program is a joint federal-state program in which the federal government provides "financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons." Harris v. McRae, 448 U.S. 297, 301, 100 S. Ct. 2671, 2680, 65 L. Ed. 2d 784, 794 (1980); see also 42 U.S.C.A. § 1396. Simply put, Medicaid "provide[s] medical assistance to the poor at the expense of the public." Mistrick v. Div. of Med. Assistance & Health Servs., 154 N.J. 158, 165 (1998). Although participation is optional, states that do participate must adhere to the requirements of Title XIX. Harris, supra, 448 U.S. at 301, 100 S Ct. at 2680, 65 L. Ed. 2d at 794.

Participating states must develop a plan including "'reasonable standards . . . for determining eligibility for and the extent of medical assistance . . . [that is] consistent with the objectives' of the Medicaid program." L.M. v. Div. of Med. Assistance & Health Servs., 140 N.J. 480, 484 (1995) (alteration in original) (quoting 42 U.S.C.A. § 1396a(a)(17)(A)).

New Jersey elected to participate in the Medicaid Program by adopting the New Jersey Medical Assistance and Health Services Act (the Act). N.J.S.A. 30:4D-1 to -19.5. The Division is the "'single [s]tate agency' responsible for administering New Jersey's Medicaid program." In re A.N., 430 N.J. Super 235, 243 (App. Div. 2013); see also N.J.S.A. 30:4D-7 (authorizing commissioner to issue through the Division "all necessary rules and regulations and administrative orders . . . to secure for the State of New Jersey the maximum federal participation that is available with respect to a program of medical assistance"). In administering New Jersey's Medicaid program, the Division has promulgated comprehensive regulations delineating the program's scope and procedures. See, e.g., N.J.A.C. 10:71-2.1 to -2.16 (establishing application process); N.J.A.C. 10:71-3.1 to -3.16 (establishing eligibility factors). County welfare agencies, such as the Board, "assist [the Division] in processing applications for Medicaid and

determining whether applicants have met the income and resource eligibility standards." Cleary v. Waldman, 959 F. Supp. 222, 229 (D.N.J. 1997), aff'd, 167 F.3d 801 (3d Cir.), cert. denied, 528 U.S. 870 (1999).

Among the objectives of Medicaid is to "provide[] medical assistance to needy persons who are institutionalized in nursing homes as a result of illness or other incapacity." M.E.F. v. A.B.F., 393 N.J. Super. 543, 545 (App. Div. 2007), certif. denied, 192 N.J. 479 (2007). Before 1988, couples would "spend down" their assets so an institutionalized spouse could qualify for Medicaid assistance to defray the cost of his or her care. Ibid. This practice often rendered the spouses who remained in the community impoverished. Ibid.

In response to this trend, Congress incorporated "spousal impoverishment provisions" in the Medicare Catastrophic Coverage Act of 1988 (MCCA). 42 U.S.C.A. § 1396r-5(a) to (h). Generally, Medicaid-eligible individuals pay part of the cost of their care and "the remainder is paid by the State and Federal governments through Medicaid." H.K., supra, 379 N.J. Super. at 324 n.2 (quoting H.R. Rep. No. 100-105(II), at 66 (1987), reprinted in 1988 U.S.C.C.A.N. 857, 899 (1987)). Furthermore, these provisions provide that certain allowances must be made from the institutional spouse's income before determining how

much of the monthly income is applied to the cost of care in the institution.  42 U.S.C.A. § 1396r-5(d).  One such allowance is made for the CSMIA.  42 U.S.C.A. § 1396r-5(d)(1)(B).[4]

The CSMIA is "the amount by which the community spouse's needs in the form of a minimum monthly maintenance needs allowance (MMMNA), established by each state in compliance with federal standards, exceeds the community's spouse's income." M.E.F., supra, 393 N.J. Super. at 546 (citing 42 U.S.C.A. § 1396r-5(d)(2)-(3)).  "The provision for this allowance ensures that income transferred from the institutionalized spouse to the community spouse to meet the latter's basic needs is not also considered available for the former's care."  Wis. Dep't of Health & Family Servs. v. Blumer, 534 U.S. 473, 482, 122 S. Ct. 962, 968, 151 L. Ed. 2d 935, 945 (2002).  Consequently, Medicaid pays a greater share of the institutionalized spouse's costs of care than it would without the CSMIA provisions.  Ibid.

The MCCA also revises the minimum monthly maintenance needs allowance by providing:

> If either such spouse establishes that the
> community spouse needs income, above the
> level otherwise provided by the minimum
> monthly maintenance needs allowance, due to

_____

[4] Congress repealed the MCCA through the Medicare Catastrophic Coverage Repeal Act of 1989, but the spousal impoverishment prevention provisions remain in effect.  Pub.L. No. 101-234, 103 Stat. 1979; Mistrick, supra, 154 N.J. at 171 n. 1.

> exceptional circumstances resulting in significant financial duress, there shall be substituted, for the minimum monthly maintenance needs allowance in subsection (d)(2)(A) of this section, an amount adequate to provide such additional income as is necessary.
>
> [42 U.S.C.A. § 1396r-5(e)(2)(B).]

Pursuant to its grant of authority in the Act, the Division issued parallel regulations. The State's CSMIA regulation reads:

> There shall be deducted from the institutionalized individual's income an amount for the maintenance of the community spouse. Except as specifically provided below, the deduction for the maintenance of the community spouse shall not exceed $1,821.25 per month . . . . In arriving at the amount that may be deducted for the maintenance of the community spouse, the deductions authorized by this section shall be reduced by the gross income of the community spouse. The community spouse deduction is authorized only to the extent that the income deducted is actually made available to (or for the benefit of) the community spouse.
>
> [N.J.A.C. 10:71-5.7(c).]

Similar to the federal statute, the New Jersey regulations provide for a fair hearing to contest a determination of the deduction. N.J.A.C. 10:71-5.7(e).

Both the MCCA and the New Jersey regulations allow for recognition of court orders for spousal support in determining the CSMIA. Further, the MCAA provides "[i]f a court has entered

11

an order against an institutionalized spouse for monthly income for the support of the community spouse, the community spouse monthly income allowance for the spouse shall be not less than the amount of the monthly income so ordered." 42 U.S.C.A. § 1396r-5(d)(5). The analogous New Jersey regulation states:

> If a court has entered an order against an institutionalized spouse for monthly income for the support of a community spouse and the amount of the order is greater than the amount of the community spouse deduction, the amount so ordered shall be used in place of the community spouse deduction.
>
> [N.J.A.C. 10:71-5.7(f).]

Guided by the applicable legislation, we note our review of administrative agency decisions is limited. Karins v. City of Atl. City, 152 N.J. 532, 540 (1998). An administrative agency's decision will be upheld "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Russo v. Bd. of Trs., Police and Firemen's Ret. Sys., 206 N.J. 14, 25 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). The judicial role focuses on three inquiries:

> (1) whether the agency action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings upon which the agency based application of legislative policies; and (3) whether, in applying the legislative policies to the facts, the agency clearly

erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors.

[H.K., supra, 379 N.J. Super. at 327 (quoting Pub. Serv. Elec. v. N.J. Dep't of Envtl. Prot., 101 N.J. 95, 103 (1985)).]

"Deference to an agency decision is particularly appropriate where interpretation of the Agency's own regulation is in issue." I.L. v. N.J. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006); see also Estate of F.K. v. Div. of Med. Assistance & Health Servs., 374 N.J. Super. 126, 138 (App. Div.) (indicating that we give "considerable weight" to the interpretation and application of regulations by agency personnel within the specialized concern of the agency), certif. denied, 184 N.J. 209 (2005). On the other hand, an appellate court is "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Pub. Safety, 64 N.J. 85, 93 (1973).

### III.

R.S. argues that the final agency decision, declining to enforce the Order, violates the plain language of the Medicaid law and regulations. Specifically, R.S. contends the Division ignored the clear and unambiguous language of N.J.A.C. 10:71-

5.7(f) and 42 U.S.C.A. § 1396r-5(d)(5), by refusing to give effect to the Order in determining the CSMIA for D.S. We reject this argument. Not only does R.S.'s rigid construction ignore the context of the Medicaid Program provisions he seeks to apply, but also abrogates the well-defined policies of the program and would lead to an absurd result. We conclude the Division's determination declining to follow the Order was neither arbitrary nor capricious.

## A.

The first issue is one of statutory construction. R.S. argues for a strict application of the canons of statutory interpretation, contending the Board and the Division disregarded the mandatory language of 42 U.S.C.A. § 1396r-5(d)(5) and N.J.A.C. 10:71-5.7(f). R.S. contends the regulations' plain language directs the Order to control the Board's review. Such a crabbed construction cannot stand as it abrogates the clear intent and purpose of the statute and obviates the Division's role in safeguarding limited Medicaid resources.

Our Court has emphasized repeatedly "when interpreting an enabling statute or any other law, a court's obligation is to determine and give effect to the Legislature's intent." N.J. Ass'n of School Adm'rs v. Schundler, 211 N.J. 535, 549 (2012).

"The primary task for the Court is to effectuate the legislative intent in light of the language used and the objects sought to be achieved." Mun. Council v. James, 183 N.J. 361, 370 (2005) (internal citations omitted) (quoting Merin v. Maglaki, 126 N.J. 430, 435 (1992)). Our Legislature expressly articulated the Medicaid program's goal of providing assistance to the medically needy, declaring:

> the intent of the Legislature . . . to provide medical assistance, insofar as practicable, on behalf of persons whose resources are determined to be inadequate to enable them to secure quality medical care at their own expense, and to enable the State, within the limits of funds available . . . to obtain all benefits for medical assistance provided by the Federal Social Security Act[.]
>
> [N.J.S.A. 30:4D-2.]

Another provision authorizes the Commissioner of the Division to issue "all necessary rules and regulations and administrative orders . . . to secure for the State of New Jersey the maximum federal participation that is available with respect to a program of medical assistance, consistent with fiscal responsibility and within the limits of funds available for any fiscal year[.]" N.J.S.A. 30:4D-7. The Legislature's intention is to align New Jersey's rules and regulations with federal objectives and assure effective use of limited resources. See ibid.; N.J.S.A. 30:4D-2; see also M.E.F., supra,

393 <u>N.J. Super.</u> at 547 (quoting <u>A.K.</u>, <u>supra</u>, 350 <u>N.J. Super.</u> at 180) ("[W]hen discussing Medicaid regulations concerning resource allocation . . . the New Jersey regulations 'essentially track the federal statute.'"). Also, in deciding whether a particular agency action is authorized, a reviewing court "may look beyond the specific terms of the enabling act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives." <u>N.J. Ass'n of School Adm'rs</u>, <u>supra</u>, 211 <u>N.J.</u> at 549.

The legislative history of the MCCA reflects Congress' concern for proper allocation of financial resources. The New Jersey Supreme Court reviewed the legislative history of the "spousal impoverishment" provisions of the MCCA and explained:

> Those provisions were intended to end the pauperization of the community spouse by allowing that spouse to protect a sufficient, but not excessive, amount of income and resources to meet his or her own needs while the institutionalized spouse was in a nursing home at Medicaid expense. Congress also recognized that because the allocation of resources depended wholly on whether a resource was in the name of one spouse or the other, couples could shelter their resources in the name of the community spouse while the institutionalized spouse would receive Medicaid coverage. MCCA closed this loophole by considering a couple's resources in their entirety, regardless of the name in which the resources were held.

> [Mistrick, supra, 154 N.J. at 170 (internal
> citations omitted).]

Congress enacted the MCCA to "assure that the community spouse . . . has income and resources sufficient to live with independence and dignity." M.E.F., supra, 393 N.J. Super. at 552-53 (quoting H.R. Rep. No. 100-105(II) (1988), reprinted in 1988 U.S.C.C.A.N. 857, 892).

Legislative history concerning 42 U.S.C.A. § 1396r-5(d)(5) also supports a finding that Congress sought to strike a balance between the maintenance of the community spouse and the preservation of limited resources:

> [I]ndividuals now can have their unique financial circumstances reviewed on a case by case basis in state court to determine the institutionalized spouse's financial responsibility to the community spouse. In this way, special circumstances can be accounted for that might otherwise not be foreseen by federal regulations. Under [the] proposed legislation, state Medicaid agencies would be required to recognize such support orders.
>
> [M.E.F., supra, 393 N.J. Super. at 556 n.8 (quoting 132 Cong. Rec. H 11437 (October 17, 1986) (statement of Rep. Mikulski)).]

Those provisions protecting community spouses "place strict limits on the amount of a Medicaid recipient's income that can be used for the community spouse allowance." H.K., supra, 379 N.J. Super. at 324 (citing Blumer, supra, 534 U.S. at 481-82, 122 S. Ct. at 967-69, 151 L. Ed. 2d at 945-46). Finally, this

17

concern for community spouses is reflected in 42 U.S.C.A. § 1396r-5(e)(2)(B), which allows for an adjustment of the MMMNA "due to exceptional circumstances resulting in significant financial distress[.]"

We conclude the Division's decision comports with the legislative policies. The decision is consistent with the broad federal and state goals of preventing the impoverishment of community spouses, while ensuring limited Medicaid resources are allocated prudently among those most in need.

In H.K., supra, 379 N.J. Super. at 323-26, we affirmed a Division decision refusing to give effect to a support order obtained in a divorce from a "bed and board" proceeding, entered after the institutionalized spouse applied for Medicaid. This court concluded the agency's decision was "consistent with the language and purpose of the Medicaid statute," id. at 327, and noted holding otherwise would invite collusive agreements to divert an institutionalized spouse's income to the community spouse in a manner contrary to the intent underlying Medicaid. Ibid. (citing Estate of G.E. v. Div. of Med. Assistance & Health Servs., 271 N.J. Super. 229, 239 (App. Div. 1994)) ("We have previously disapproved such potentially unlimited transfers of income from an institutionalized spouse to the community spouse.").

Thus, R.S.'s invocation of the canons of statutory interpretation fails to adequately account for the complexity of the Medicaid statutes and regulations, the policies underlying Medicaid, the legislative history regarding 42 U.S.C.A. § 1396r-5(d)(5), and the significant deference accorded agency decisions in the Medicaid context. As the Federal District Court for the District of New Jersey observed:

> The Medicaid Act contains complex, interrelated provisions, and it would be foolhardy to impute a plain meaning to any of its provisions in isolation. A statute must be read as a whole; words depend upon context; they have only a communal existence; and not only does the meaning of such interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used.
>
> [Cleary, supra, 959 F. Supp. at 228-29 (internal quotation marks omitted).]

B.

R.S. next contends the agency's decision was unsupported and must be set aside. In considering whether a reviewing "court owes substantial deference to the agency's expertise and superior knowledge of a particular field[,]" a key inquiry is "whether the record contains substantial evidence to support the findings on which the agency based its action." Herrmann, supra, 192 N.J. at 28 (citation omitted). As demonstrated by our review of the statutory context and legislative history, the

19                                                    A-5798-11T1

claimed "plain language" reading suggested by R.S. is unfounded. N.J. Dep't of Envtl. Prot. v. Exxon Mobil Corp., 420 N.J. Super. 395, 404 (App. Div. 2011) (quoting DiProsopero v. Penn, 183 N.J. 477, 493 (2005)) ("A reviewing court 'may also resort to extrinsic evidence if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language.'"). As noted in H.K., an interpretation of N.J.A.C. 10:71-5.7(f) "permit[ting] a community spouse to obtain an unlimited increase in the spousal allowance by obtaining a court order for support . . . would nullify the statutory and regulatory limitations on the community spouse allowance." H.K., supra, 379 N.J. Super. at 328.

The Division's findings are supported by calculations of R.S. and D.S.'s income and expenses, and its decision is further supported by R.S.'s failure to allege any special circumstances necessitating enforcement of the Order. Moreover, strict enforcement of the amended  support order would produce the absurd result of providing D.S. with a monthly spousal allowance $1945.27 greater than her MMMNA, while depleting the limited resources available to provide for other individuals in need. We conclude the record supports the Division's adoption of the Board's sound methodology, which is consistent with the policies of New Jersey's Medicaid program, specifically, N.J.A.C. 10:71-

5.7(c) (providing for calculation of CSMIA) and N.J.A.C. 10:71-5.7(e) (providing for an increase in CSMIA upon demonstration of exceptional circumstances resulting in financial distress). Using D.S.'s actual shelter costs, including a mortgage of $2320 per month, and other preset standards, the Board determined D.S.'s MMMNA (labeled "total community deduction standard" on the community spouse deduction worksheet) to be $3972.19. The Board then subtracted $2457.26, D.S.'s monthly total gross income, to calculate her CSMIA as $1514.93.

Pursuant to N.J.A.C. 10:71-5.7(c) and U.S.C.A. § 1396r-5(d)(3), the Board determined that this "total community deduction" (the CSMIA) would be deducted from R.S.'s total monthly income of $3597.27. After accounting for minor deductions including the personal needs allowance ($35.00) and health insurance premiums ($102.07), R.S.'s remaining monthly income, totaling $1945.27, would be paid toward the costs of his care. If the March 2011 award were given effect, that $1945.27 would have been paid to D.S., making her net monthly income $5917.46 (comprised of all of her earned income and almost all of R.S.'s unearned income). To give effect to the amended support order would cause the CSMIA for D.S. to more than double, despite the absence of exceptional circumstances resulting in financial duress. Such a result demonstrates the

arbitrariness of isolating the language of N.J.A.C. 10:71-5.7(f), as R.S. contends. Indeed, the obvious intent of the Order was to maintain D.S.'s lifestyle prior to R.S's institutionalization at the expense of the Medicaid program.

C.

R.S. asserts that we should defer to the Order citing the Appellate Division's deference to the special expertise of the Family Part in dealing with family matters. However, this argument is inappropriately broad. Rather, in our review of a trial court's order, we grant substantial deference to the trial court's findings of facts following a hearing in which the court is able to assess the evidence. Cesare v. Cesare, 154 N.J. 394, 411-413 (1998). This deference is specifically appropriate when the trial court "hears the case, sees and observes the witnesses, [and] hears them testify," because "it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Id. at 412 (alteration in original) (internal quotation marks omitted) (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988)). Further, the Court has held that "an appellate court should not disturb the 'factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to

offend the interests of justice.'" Ibid. (alteration in original) (quoting Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)).

In this case, the Family Part Judge did not hold a fact-finding hearing to which we owe deference. The Order was not supported by "adequate, substantial, credible evidence[;]" rather, the evidence presented does not support the Order and thus, we need not defer to the Order. Moreover, the incongruity between the regulatory CSMIA calculations and those factors considered by the Family Part in awarding support orders further demonstrates the potential for an absurd result in applying the plain language of N.J.A.C. 10:71-5.7(f). While the MCCA provisions on the whole focus on preventing the pauperization of community spouses, the family courts have latitude to contemplate factors that are irrelevant in calculation of CSMIA, such as "[t]he standard of living established in the marriage or civil union and the likelihood that each party can maintain a reasonably comparable standard of living." N.J.S.A. 2A:34-23.

Here, the record clearly indicates the Order was entered to allow for the payment of all of D.S.'s living expenses, including monthly expenses of $150 for hair care, $100 for life insurance, and $50 for unspecified contributions. Diverting income toward payment of these expenses reflects a paradigm of

maintaining a spouse's lifestyle, rather than the more modest goal of ensuring personal needs. As noted by the Division, the difference would be at the taxpayer's expense.

The record also contains substantial evidence to support the Board's treatment of R.S.'s income. R.S. attempts to limit relevant evidence to the proceedings in the Family Part, including D.S.'s complaint and CIS, and the two support orders. Because agency discretion must accord with express and implied legislative policies, the Division was not required to divert all income to a community spouse without considering whether there are "exceptional circumstances" warranting the payment. Additionally, R.S.'s own application for medical assistance, the Board's eligibility decision, and the community spouse deduction worksheet are all relevant in determining the post-eligibility treatment of his income; without these forms, R.S would not be deemed eligible for Medicaid in the first instance.

We also address R.S.'s argument the ALJ and the Division improperly undertook an "exceptional circumstances" analysis. However, R.S. sought relief in a letter dated September 21, 2011, specifically requesting a "Fair Hearing" pursuant to N.J.A.C. 10:71-5.7(e), which allows for a fair hearing to determine whether an increase is warranted due to "exceptional circumstances." Therefore, the appropriate standard was applied

according to R.S.'s requested relief. However, we will still address this issue.

Our review asks "whether, in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors." H.K., supra, 379 N.J. Super. at 327 (quoting Pub. Serv. Elec., supra, 101 N.J. at 103). The Division relied on the factual findings of the ALJ which appropriately considered R.S.'s financial information submitted to calculate the CSMIA in accordance with N.J.A.C. 10:71-5.7(c) and U.S.C.A. § 1396r-5(d)(3).

The record clearly supports the Board's calculation of D.S.'s CSMIA and accordingly, the primary question at the fair hearing, and in the Division's subsequent review of the hearing, was whether or not D.S. was entitled to a revision of her CSMIA based upon "exceptional circumstances resulting in financial duress[.]" N.J.A.C. 10:71-5.7(e). Relying on the contents of the record, the ALJ found that R.S. had averred no such circumstances:

> D.S. does not qualify for an increase in the community spouse monthly maintenance allowance based on exceptional circumstances. D.S. does not claim any medical/physical impairments of her own. She is gainfully employed. There is no showing that the community spouse needs specialized medical care or attention. The

> instant case does not involve the type of long-term health and financial problems as contemplated in the term "exceptional circumstances." In sum, D.S. has not demonstrated the requisite level of significant financial duress to justify an increase above the $1,514.93 she has already received from the respondent.

After reviewing all documents in the record, including those submitted to the Family Part, the Division similarly found that D.S.'s CSMIA should not be increased to cover her "ordinary and regular expenses." The Director further found "interesting[] [that] even without her husband in the household, her monthly expenses remain nearly the same ($5,827 vs. $5,651)."[5] This meager $176 decrease in monthly expenses upon institutionalization of R.S. reasonably led to the skepticism of the Division in considering D.S.'s calculations concerning her expenses. In reviewing the record for any possible "exceptional circumstances," the Division recognized the credit card debt of R.S. may warrant an increase in income for D.S. "depending on the circumstances such as when and how the charges were incurred and if the expenses were charged for the couple's sole use."

Considering the foregoing in light of the implied and express legislative policies and legislative history discussed above, the Director's decision was well-reasoned and made in

---

[5] D.S. made this representation in her CIS.

reliance on relevant guiding principles and a sufficient factual record.  To conclude, the Division's decision was not arbitrary, capricious or unreasonable, having passed muster under the three-pronged test.

D.

R.S. makes additional arguments, also rejected by the Division, which we find lack sufficient merit to warrant extensive discussion.  R.S. asserts that the Division engaged in improper rule-making by imposing an "exceptional circumstances" criterion for post-eligibility treatment of a recipient's income and by imposing a requirement that R.S. give "notice" to Medicaid on the support action.  This argument lacks merit.  In Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 330-31 (1984), the Supreme Court held, for due process reasons, that an administrative agency must conduct formal rulemaking before imposing new standards upon those it regulates.  Six factors guide our analysis of when such formal rulemaking is necessary:

> (1) [the decision] is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5)

reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy.

[Id. at 331.]

These factors, "either singly or in combination," determine whether agency action amounts to the promulgation of an administrative rule. Id. at 332. Having considered each of the six enumerated Metromedia factors, we are satisfied that the decision to apply an "exceptional circumstances" criterion for post-eligibility treatment of a recipient's income was an unassailable exercise of the agency's pre-existing authority.

R.S.'s argument is based on a misreading of the administrative decisions of the ALJ adopted by the Division. In her decision, Judge Rigo referred to the language of 42 U.S.C.A. § 1396r-5(e)(2)(B), which expressly allows for revision of the MMMNA "in exceptional circumstances resulting in significant financial distress," and N.J.A.C. 10:71-5(e), which allows for revision if the community spouse or recipient establishes at a fair hearing that "exceptional circumstances resulting in financial duress" exist. Relying on the record and the express language of the Medicaid law and regulations, Judge Rigo

concluded an increase in the MMMNA was not warranted.  This was not rule-making, but the application of the criterion already established in 42 U.S.C.A. § 1396r-5(e)(2)(B) and N.J.A.C. 10:71-5.7(e).

Next, regarding the alleged creation of a "notice" requirement, when Judge Rigo considered the Order, she noted that the Board had not been provided notice or an opportunity to be heard.  Judge Rigo did not, however, adopt a rule; rather, she analogized the facts of this case to those of H.K., ultimately concluding, based on the record, that R.S.'s "obtaining the court order was an attempt to circumvent the Medicaid regulations concerning the levels of spousal allowance."  Similarly, in its final agency decision, the Division adopts this finding, noting "[n]either [R.S.] nor his wife appears to have informed the court of the true ramifications of the support order on Medicaid[.]"  Although this was a circumstance relevant to the Division in deciding not to give effect to the amended support order, it did not amount to formulating a rule.

Furthermore, R.S. further contends that the outcome of this appeal is controlled by our decision in M.E.F., supra, 393 N.J. Super. 54.  In M.E.F., the community spouse who "received $576 per month from Social Security as her sole source of independent

income," was allocated a community spouse allowance of approximately $445 upon a determination of her institutionalized spouse's Medicaid eligibility. Id. at 548. Dissatisfied with this amount, the community spouse sought relief from the Family Part in the form of separate maintenance, pursuant to N.J.S.A. 2A:34-24. Id. at 548-49.

At issue was whether the administrative hearing and the Family Part constitute alternative avenues to seek relief from the determination of an allegedly inadequate CSMIA, as well as what standard applied in such a review. Id. at 545, 549-51. We reached our decision on procedural grounds, reasoning that "M.E.F.'s effort to obtain [a support] order, perfected only after her MMMNA had been reconsidered and increased, albeit not to her satisfaction, constituted parallel litigation and a form of forum shopping of a sort that we are unwilling to recognize as valid." Id. at 557. We added that the "present appeal does not require [a] decisive construction of the effect of the court ordered support provision[.]" Ibid. We explained:

> An award of support entered against an institutionalized spouse prior to Medicaid eligibility would clearly be governed by the standards articulated in N.J.S.A. 2A:34-23. We see no principled reason why those standards would change simply because the spouse was found to be eligible for Medicaid and subject to the spousal income protection provisions of the Act. We do note, however, that the standards for calculating support,

set forth in N.J.S.A. 2A:34-23, permit consideration of spousal "actual need," ability to pay, and "[a]ny other factors which the court may deem relevant." N.J.S.A. 2A:34-23b(1) and (13). The dual purposes of the MCCA — to ensure that the community spouse has sufficient, but not excessive, income and to ensure that individuals not be permitted to avoid payment of their own fair share for long-term care — are certainly relevant considerations in this regard.

[Id. at 557-58.]

Thus, we were concerned with preserving the standards of the family proceedings and ensuring that such proceedings consider the goals of the Medicaid program when relief is sought by a community spouse. Ibid. While this quote regards the standard to be applied in Family Court proceedings, it envisions a flexibility that should be extended to the Division to allow for deviations from the statutorily calculated MMMNA where the circumstances warrant special consideration. Ibid.

R.S. next asserts the "forum shopping" found in M.E.F., supra, 393 N.J. Super. at 557, is absent here, since D.S. obtained her support order prior to R.S.'s Medicaid application; however, M.E.F. is otherwise distinguishable. There, the community spouse's sole source of independent income was monthly payments of $545 from Social Security. Id. at 548. In contrast, D.S. earns $2457.26 in monthly income. Importantly, there was a hearing held by the Family Part in M.E.F., as

opposed to the record here, which indicates an uncontested application decided on the papers.

We find H.K., supra, 379 N.J. Super. 321, more on point. There, an institutionalized spouse qualified for Medicaid "even though he had Social Security and pension income of approximately $4,500 per month and his wife worked full-time and earned over $2,000 per month." Id. at 324. Because the community spouse's monthly income was too high to entitle her to an allowance, the couple "attempted to invoke the 'court order' exception of N.J.A.C. 10:71-5.7(f), by obtaining a divorce from 'bed and board' with a property settlement agreement providing for support to be paid to [the community spouse] from the [institutionalized spouse's] pension." Id. at 325-26. The Division adopted the decision of the ALJ not to give effect to the court-ordered spousal support obligation, reasoning that "giving effect to the divorce judgment would be contrary to the purpose and intent of the [MCCA]." Id. at 326 (internal quotation marks omitted).

We agreed, reasoning that, "given the facts of [the] case, the agency's decision is consistent with the language and purpose of the Medicaid statute." Id. at 327. Additionally, accepting the petitioner's position in that case "would nullify the statutory and regulatory limitations on the community spouse

allowance[,]" thereby yielding an "absurd result." Id. at 328. We further stated that

> [t]his is not a situation where a court has held an evidentiary proceeding and determined independently that the community spouse is in need of support or that she has "special circumstances." Nor was the court that entered the order even notified that [the institutionalized spouse] was receiving Medicaid benefits. This is also not a case where there was an existing support obligation that pre-dated the Medicaid application and was entered at a time when such application was not anticipated. Rather, the property settlement agreement in this case was an undisguised attempt to circumvent the Medicaid regulations concerning the appropriate level of spousal allowance.
>
> [Id. at 329.]

Supporting this conclusion was our observation that the proceeding in the Family Part in H.K. was not "genuinely adversarial" because the State Medicaid program had not been provided notice; further, "no factual record was made to support the alimony award, and the court that entered the order did not determine whether the award was justified in light of the countervailing interests of the State[.]" Id. at 329-30.

The record here similarly lacks any evidence that R.S. contested D.S.'s allegations or computations of financial needs asserted in her complaint. Because R.S. did not file any opposition to D.S.'s application, the entire record in the

A-5798-11T1

Family Part proceeding consisted of D.S.'s verified complaint and CIS, the acknowledgment of service, and two orders. In sum, as the Division noted, "[a] review of the record indicates that the wife's action in family court was not adversarial and was chosen to avoid following the Medicaid spousal impoverishment rules[.]" "Generally, an appellate court does not substitute its judgment of the facts for that of an administrative agency." Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 587 (2001).

These circumstances raise the concern noted in H.K. and echoed in the final agency decision that spouses may collude and use support orders "to circumvent the Medicaid regulations concerning the appropriate level of the spousal allowance." H.K., supra, 379 N.J. Super. at 329. As the Division noted:

> The instant matter shows how one couple could obtain legal counsel to seek judicial fiat to circumvent the spousal impoverishment rules. . . . [y]et another couple, without income or wherewithal to hire counsel, would have to abide by the statutory calculation and the statutory remedy to have additional income set aside for the community spouse.

In light of the substantial deference afforded agency decisions, the express and implied legislative policies underlying Medicaid, and the circumstances of this case, we affirm the Division's approval of D.S.'s CSMIA determined in accordance with N.J.A.C. 10:71-5.7(c) and 42 U.S.C.A. § 1396r-5(d).

R.S. finally claims entitlement to attorney's fees pursuant to 42 U.S.C.A. §§ 1983, 1988, alleging the Division's refusal to enforce the amended support order amounted to an arbitrary and capricious violation of established law and his civil rights. Because R.S. failed to prevail on any issue in the litigation, his claim for attorney's fees clearly lacks merit. See Singer v. State, 95 N.J. 487, 494, cert. denied, 469 U.S. 832, 105 S. Ct. 121, 83 L. Ed. 2d 64 (1984).

Affirmed but without prejudice as to any reconsideration by the Division of a potential adjustment to the MMMNA concerning the extensive credit card balances of R.S.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION