**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5226-17T2

B.F.,

    Petitioner-Appellant,

v.

UNITED HEALTHCARE,

    Respondent-Respondent.

Argued October 29, 2019 – Decided November 12, 2019

Before Judges Gilson and Rose.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Michael Raymond Brower argued the cause for appellant (Disability Rights New Jersey, attorneys; Michael Raymond Brower, on the briefs).

Corey S. D. Norcross argued the cause for respondent United Healthcare (Stradley Ronon Stevens & Young, LLP, attorneys; Corey S. D. Norcross, on the brief).

Jacqueline R. D'Alessandro, Deputy Attorney General, argued the cause for respondent Department of Human

Services, Division of Medical Assistance and Health Services (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, on the brief).

PER CURIAM

Petitioner B.F. appeals a final agency decision of the Department of Human Services (DHS), Division of Medical Assistance and Health Services (DMAHS), reducing her personal care assistance (PCA) from thirty-five to twenty-one hours per week. The Director of DMAHS upheld an initial decision by an Administrative Law Judge (ALJ), following a Medicaid fair hearing. We affirm.

We incorporate by reference the undisputed facts and procedural history set forth at length in the ALJ's decision. In essence, B.F. is an octogenarian, who suffered a stroke in 2006, causing left-side paralysis. B.F. uses a wheelchair, and needs assistance with her activities of daily living (ADLs) and instrumental activities of daily living (IADLs). She lives with her long-time friend, D.B.,[1] in a home they own jointly.

When B.F. became eligible for Medicaid in 2010, she enrolled in the State's then-existing Global Options for Long-Term Care Medicaid Waiver

---

[1] D.B. is sometimes referenced in the record as B.F.'s daughter.

A-5226-17T2

Program (GO program). A managed care organization (MCO) under the GO program approved a State-provided PCA aide for thirty-five PCA hours per week, five days per week. Four years later, United Healthcare (United) became B.F.'s MCO through Medicaid's Managed Long Term Services and Supports (MLTSS) program and her previously-allotted hours continued unchanged.[2] See N.J.A.C. 10:60-3.10 (b) (requiring continuation of "the same level of services previously approved . . . until the completion of a recertification by the new provider agency").

In December 2016, United reevaluated B.F.'s need for PCA services. Utilizing the current PCA Nursing Assessment tool (PCA tool), a United case manager and registered nurse (United's nurse) conducted a face-to-face evaluation of B.F., and determined she only required nineteen PCA hours per week, five days per week. Prior to the hearing, another registered nurse (B.F.'s expert) conducted two independent assessments of B.F., and determined she required forty hours of PCA services per week, seven days per week.

United's nurse testified at the hearing on its behalf. Her assessment was based on the PCA tool, which calculated the supervised time needed for ADLs

_____

[2] On July 1, 2014, the MLTSS essentially replaced the GO program.

and IADLs, and her interviews of B.F. and B.F.'s PCA aide. United's nurse detailed the number of hours she assessed for each category.

For example, the maximum hours permitted for "ambulation, transfers, and positioning" were allotted because B.F.'s paralysis caused "difficulty with repositioning" her body. Conversely, United's nurse did not allot any time for eating because B.F. feeds herself, nor household shopping because those tasks are performed by D.B. Nor did she allot any time that exceeded the PCA Assessment tool's guidelines for B.F.'s activities. But United's nurse has exceeded the maximum allotment time for other beneficiaries in "extraordinary situations."

B.F. testified on her own behalf and presented the testimony of her expert and D.B. B.F. detailed her physical limitations. D.B. confirmed that B.F.'s condition had not improved since she had begun receiving PCA services. B.F.'s PCA aide did not testify.

B.F.'s expert discussed the two assessments she performed, conceding she was "not an expert on PCA or Medicaid assessments, or the PCA Assessment tool." Unlike United's nurse, B.F.'s expert did not consult with B.F.'s PCA aide; based her forty-hour assessment on a seven-day period; and did not specify whether any of those hours could be attributed to services performed by D.B.

Recognizing the parties did not dispute B.F.'s physical abilities and functional needs, the ALJ framed the issue presented as whether B.F.'s PCA hours were "appropriately reduced . . . from [thirty-five] to [nineteen] based on her needs." Although the ALJ found "the testimony of all of the witnesses credible[,]" she gave more weight to the testimony and opinions of United's nurse. The ALJ elaborated:

> [United's nurse] consulted not only with B.F., but with B.F.'s [PCA] aide who spends [thirty-five] hours per week caring for B.F. and actually provided the assistance for which the PCA-services allocation was made. On the other hand, [B.F.'s expert] did not consult the [PCA] aide in completing her assessment and formulating her opinions and report. Moreover, United seeks to reduce [B.F's] PCA hours in accordance with the hours calculated using the [PCA t]ool, and as [B.F.'s expert] conceded that she is not an expert on Medicaid nor the [PCA t]ool, [so] she is not qualified to challenge United's use of the tool as it pertains to B.F.

Based on the assessment performed by United's nurse, the ALJ determined B.F.'s PCA hours were "properly reduced" in accordance with her assistance requirements. But, the ALJ reduced B.F.'s hours to twenty-one – instead of nineteen – pursuant to the testimony of United's nurse. In particular, after hearing B.F.'s testimony concerning "her current bathing and dressing needs[,]" United's nurse testified "she would have awarded [B.F.] additional time beyond the [nineteen] hours . . . ."

5

B.F. took exception to the ALJ's recommendation and appealed to the Director of DMAHS, who adopted the ALJ's initial decision. In doing so, the Director noted:

> In this case, when [B.F.] became a client of United Healthcare, it conducted a reassessment of her PCA needs. In conducting the new assessment, United's nurse was aware of [B.F.]'s current medical conditions and needs and the tasks necessary to meet her specific needs. United's nurse testified at the hearing that the times listed for each activity on the PCA tool are guidelines that can be adjusted in extraordinary situations. However, she did not feel that [B.F.]'s conditions were so extraordinary as to warrant additional time. She also testified that in two of the categories on the PCA tool, bathing and dressing, she would have allotted additional time had [B.F.] communicated to her that she either wanted or needed assistance in these areas.

On appeal, B.F. raises the following points for our consideration:

> I. DMAHS's decision was arbitrary and capricious because it improperly placed the burden on B.F. to prove she still needs long-standing services that DMAHS previously found necessary.
>
> II. DMAHS's decision was arbitrary and capricious because [DMAHS and United] failed to meet their burden of proof to produce evidence of improvement in B.F.'s medical condition or ability to care for herself to warrant reducing long-standing services.
>
> III. The [PCA A]ssessment tool cannot form the basis for an agency decision because, as completed, it does not accurately capture the actual time needed to

6

complete all of B.F.s ADLs and IADLs in violation of federal Medicaid law and the instructions on the face of the tool.

We reject plaintiff's contentions, recognizing our role in reviewing agency decisions is significantly limited. R.S. v. Div. of Med. Assist. & Health Servs., 434 N.J. Super. 250, 260-61 (App. Div. 2014). "An administrative agency's decision will be upheld 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Id. at 261 (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). In determining whether agency action is arbitrary, capricious, or unreasonable, our role is restricted to three inquiries:

> (1) whether the agency action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings upon which the agency based application of legislative policies; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors.
>
> [Ibid. (citation omitted).]

"Deference to an agency decision is particularly appropriate where the interpretation of the [a]gency's own regulation is in issue." Ibid. (citation omitted). We therefore defer to the agency's superior knowledge and expertise

in the field.  See Thurber v. City of Burlington, 191 N.J. 487, 502 (2007). "Nevertheless, we are not bound by the agency's legal opinions." A.B. v. Div. of Med. Assist. & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009) (internal quotation marks and citation omitted).  "Statutory and regulatory construction is a purely legal issue subject to de novo review."  Ibid. (citing Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

The DHS has promulgated regulations governing the provision of PCA services through Medicaid, N.J.A.C. 10:60-3.1 to -10, which, in turn, is generally implemented by the DMAHS.  See N.J.S.A. 30:4D-7.  Covered PCA services include assistance with ADLs, such as:  grooming, bathing, eating, dressing, and the like, N.J.A.C. 10:60-3.3(a)(1); and IADLs, which "are essential to the beneficiary's health and comfort," and include e.g., shopping for the beneficiary's personal care and groceries.  N.J.A.C. 10:60-3.3(b).

PCA services are limited to a maximum of forty hours per calendar work week and must be pre-authorized in accordance with N.J.A.C. 10:60-3.9 and N.J.A.C. 10:60-3.8(g).  Importantly, a periodic[3] nursing reassessment visit is

---

[3] When the present reassessments were performed, the regulation required a six-month reassessment.  As of September 17, 2018, the regulation requires a yearly reassessment.  See 50 N.J.R. 1992(b) (Sept. 17, 2018).

required to evaluate an individual's need for continued PCA services. N.J.A.C. 10:60-3.5(a)(3). An individual who has received approval for eligible services is not, therefore, entitled to rely ad infinitum on the initial approval and remains subject to reevaluation.

Implemented in January 2015, the current PCA tool was structured according to the same categories of ADL and IADL tasks set forth in N.J.A.C. 10:60-3.9(b)(1), providing a specific range of minutes for each task. The PCA tool's guidelines comport with the regulation's express directive that health management providers calculate numerical scores based on the beneficiary's need. N.J.A.C. 10:60-3.9(b)(2). The PCA tool expressly provides: "The times listed for each activity are guidelines. If the member requires more or less time, place the required time in the box and write an explanation why."

Guided by these principles, we determine that this is not one of "those rare circumstances in which an agency['s] action[s are] clearly inconsistent with its statutory mission," George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994), or where its findings lack "fair support in the evidence." Thurber, 191 N.J. at 501. Instead, the agency's decision "is supported by sufficient credible evidence on the record as a whole." R. 2:11-3(e)(1)(D).

We reject B.F.'s contentions that the DMHAS and United placed the burden on her to prove she needed thirty-five hours of PCA services, and they were required to demonstrate her medical condition improved. Neither the DMHAS nor United dispute that they bore the burden to establish the PCA hours they deemed necessary here. Instead they argue B.F.'s ultimate award of twenty-one hours per week was amply supported by the evidence where, as here, B.F.'s condition remained unchanged and she did not demonstrate it deteriorated since her initial assessment.

The record developed before the ALJ amply supported the findings of fact and conclusions of law adopted by the Director in rendering her final decision, reducing B.F.'s PCA hours under the regulations. In particular, the Director conducted an independent review of the record, relying on the testimony and opinions of United's nurse, which the ALJ found more credible than those of B.F.'s expert. Notably, the ALJ increased B.F.'s hours from United's determination of nineteen to twenty-one based on the candid testimony of United's nurse, who adjusted her recommendation pursuant to B.F.'s testimony at the hearing. Also, as the ALJ recognized, unlike B.F.'s expert, United's nurse utilized the PCA tool, in conjunction with a face-to-face clinical appraisal. We

defer to the agency's superior knowledge and expertise in the field. See Thurber, 191 N.J. at 502.

We are equally unpersuaded by B.F.'s arguments that United improperly applied the PCA, thereby failing to accurately capture the time needed to complete her ADLs and IADLs. In particular, B.F. claims by awarding the maximum time in certain categories, United's nurse improperly "capped" her time, and imposed upon D.B. to assist with her ADLs and IADLs. The record belies B.F.'s arguments.

For example, United's nurse testified she scored B.F. at the maximum for certain categories, but she "didn't feel like anything was exceptional that [she] needed to note it beyond what the tool already allows." Conversely, United's nurse has awarded scores for other beneficiaries beyond the maximum guidelines set forth in the PCA tool in "extraordinary situations," including "someone who is bedbound and needs to be repositioned really frequently" or "someone maybe that . . . has a lot of pain and in order to transfer them [sic], it would take a really long time . . . so as not to cause them [sic] too much discomfort." Those subjective findings dispel B.F.'s claim that the PCA tool was improperly applied here.

Further, as specifically noted on the PCA tool, United's nurse determined B.F. preferred that D.B. perform certain tasks, such as ambulation and bathing. Regarding ambulation, B.F. requested five PCA days per week because "her daughter assists on weekends." As for bathing, United's nurse noted B.F. "prefers to bathe with assistance of daughter."

We conclude the DHMAS neither acted arbitrarily nor capriciously in reducing B.F.'s hours. Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001). Nor, did the agency engage in improper "rule-making." To the extent not specifically addressed, B.F.'s remaining claims lack sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5226-17T2