**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0150-23

I.M.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES and MONMOUTH
COUNTY DIVISION OF
SOCIAL SERVICES,

     Respondents-Respondents.

_____

Argued January 28, 2025 – Decided February 4, 2025

Before Judges Susswein, Perez Friscia and Bergman.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Chelsea-Lee Hanke argued the cause for appellant (Archer Law Office, attorneys; Chelsea-Lee Hanke and Brandie M. Tartza, on the briefs).

Elizabeth M. Tingley, Deputy Attorney General, argued the cause for respondent Division of Medical

Assistance and Health Services (Matthew J. Platkin, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Elizabeth M. Tingley, on the brief).

PER CURIAM

Appellant I.M. appeals from the July 7, 2023 final agency decision of the Assistant Commissioner of the Division of Medical Assistance and Health Services (Division), which affirmed the Monmouth County Division of Social Services' (County) denial of her Medicaid benefits.  We affirm.

I.

Since 2016, appellant has resided at Sunnyside Manor, an assisted living facility.  At the time, she suffered from various medical ailments, including chronic obstruction pulmonary disease, diabetes, hypertension, and impaired short-term memory.  Appellant authorized her son pursuant to a power of attorney to act on her behalf.  Appellant's son applied for Medicaid benefits from the County on her behalf.  On March 31, 2022, a Sunnyside administrator completed the assisted living/adult family care referral form for appellant's County application for Managed Long Term Services and Supports (MLTSS) Medicaid program benefits.  The form listed appellant's necessary daily living assistance and her medication care needs.

On June 17, appellant filed a New Jersey FamilyCare Aged, Blind, Disabled Program application for Medicaid benefits with the County. Her submission documented that she had created an irrevocable qualified income trust and included financial information. The County requested that appellant submit additional verifications information by July 22. It specifically requested appellant provide the Sunnyside room and board rate, "medical costs," funding information for the trust, and a verification of financial transactions. The County's verification stated that appellant's failure to provide the information "w[ould] cause [her] application to be denied." A County supervisor thereafter called Sunnyside, seeking more medical expense information. An administrator at Sunnyside advised the supervisor that appellant's medical expense rate was $75 per day. The supervisor requested written verification, and on July 13, Sunnyside's administrator provided a letter confirming that appellant was "a care level [two patient] and med level [two patient] at a cost per day of [$]75."

On July 21, the County issued its eligibility decision denying appellant's Medicaid application for MLTSS program benefits because appellant's "total gross income of $8,993.45 per month (Social Security $2,314.10 for 2022 + Pension $1,393.64 + Annuity $5,285.71) [wa]s sufficient to pay the daily charge of '$75 per day' ($2,325 per month) [to] Sunnyside . . . for administration of

3

medication and for help."  (Emphasis omitted).  The County's decision further stated the $75 medical expense "daily charge rate was provided to this office on [July 13,] 2022 by Sunnyside."

On July 26, 2022, after receiving the County's denial, appellant's counsel emailed Sunnyside seeking clarification as to the "daily rate" and requesting appellant's "2022 bills."  A Sunnyside billing department employee responded that the $75 rate was not correct.  The same day, appellant sent the County Sunnyside's billing invoices for 2022, which included charges for:  room and board, ranging from $176.25 to $255 per day; "[a]ssistance with [d]aily [l]iving . . . at $40 per day"; "[m]edication management . . . at $35 per day"; and "[g]eneral store" charges that varied each month.  In May 2022, appellant's room and board rate decreased because she moved from a one-bedroom to a studio.

On August 4, appellant requested a hearing.  On August 19, the Division acknowledged appellant's hearing request and transferred the matter to the Office of Administrative Law (OAL).

On March 7, 2023, an Administrative Law Judge (ALJ) held a hearing. Sunnyside's co-owner and operator testified that Sunnyside's base level room and board rate included medical costs that are "the same for every resident and only var[y] upon the size of the[ir] apartment."  He was "[un]able to say what

4

portion" of the daily room and board expenses "[were] medical" and asserted that the invoices did not accurately delineate appellant's daily medical expenses. The County's supervisor testified that she personally confirmed appellant's medical expense rate of $75 per day with Sunnyside's administrator, and she "tried her best to make sure that the billing numbers provided to her were accurate."

On April 14, after the parties filed summation briefs, the ALJ issued an initial decision affirming the County's denial. The ALJ first highlighted that "[appellant] d[id] not contest . . . her gross monthly income was $8,993.45." The ALJ then found appellant's gross monthly income exceeded the $2,523 MLTSS Medicaid income cap, and Sunnyside's invoices listed a medical expense rate totaling $75 per day. She noted while eligible Medicaid recipient's medical costs at assisted living facilities are covered, appellant offered no evidence of a different medical expense rate, and appellant's offered daily medical expense rate included room and board, which was precluded from reimbursement. The ALJ explained assisted living facilities are considered community-based services available to Medicaid eligible recipients, but individuals are responsible for paying their room and board costs.

On April 20, appellant filed written exceptions to the ALJ's decision. On July 7, the Assistant Commissioner for the Division issued a final agency decision, which adopted the ALJ's initial decision and separately found appellant's Sunnyside assisted living facility "medical cost was $75 per day." The Assistant Commissioner noted that appellant had submitted a letter to the County stating her daily rate was $330. She referenced that appellant provided the County with Sunnyside's invoices from January 2022 through May 2022, which included room and board rates ranging from $176.25 to $255. The invoices also included four described rate amounts.

Appellant had first argued before the ALJ that the County's decision was "based on an erroneous view of what medical expenses are," and "[s]econd, it [was] based on a fundamental misapprehension of how billing and care at an assisted living facility . . . works." The ALJ was unpersuaded by appellant's arguments. In affirming the denial, the Assistant Commissioner found it relevant that Sunnyside had affirmatively told the County supervisor that the medical expense rate was $75 per day. After noting appellant and Sunnyside disputed the $75 rate, the Assistant Commissioner found appellant's submitted invoices from Sunnyside to the County delineated the cost of "[a]ssistance with [d]aily [l]iving . . . at $40 per day" and "[m]edication management . . . at $35

per day," corroborating the medical expenses. She further found Sunnyside's billing employee's email to appellant dated July 26, 2022, which indicated the $75 rate provided to the County was an incorrect reimbursement rate, did not sufficiently refute the County's evidence and noted appellant provided no invoice or cost breakdown. Further, the Assistant Commissioner indicated appellant received an income of $8,933.45 per month. Because Medicaid does not cover assisted living room and board costs, and appellant's income far exceeded the monthly cost of her medical expenses of "approximately $2,250 per month," the Assistant Commissioner affirmed the denial.

On appeal, appellant contends reversal is warranted because: (1) the Assistant Commissioner and ALJ incorrectly determined appellant's gross monthly income, as her pension and annuity income are deposited monthly into a qualified trust created consistent with the requirements of 42 U.S.C. § 1396p(d)(4)(B), which precludes the income from consideration when calculating her monthly gross income and placing her below the eligibility limit; (2) the Assistant Commissioner's reliance on Sunnyside's administrative representative's $75 daily medical expense rate was insufficient, and the Assistant Commissioner's failure to properly consider the testimony of credible witnesses regarding medical costs was arbitrary, capricious, and unreasonable;

A-0150-23

(3) the room rate was misinterpreted when determining medical costs, and thus, the Assistant Commissioner's decision, which adopted the ALJ's initial decision, was arbitrary, capricious, and unreasonable; (4) requiring Sunnyside to provide an itemized breakdown of charges on its invoice was unsupported, lacks fair support in the record, and is unreasonable given the regulatory framework governing assisted living facilities; (5) services provided to appellant at Sunnyside Manor were necessary medical services; (6) requiring appellant to provide an itemized medical expense and room and board expense breakdown of charges at Sunnyside's assisted living facility for Medicaid coverage lacks fair support in the record and is a misinterpretation of the Medicaid reimbursement framework; (7) the Assistant Commissioner incorrectly relied on C.M. v. Middlesex County Board of Social Services, No. HMA 9650-19, 2020 N.J. AGEN LEXIS 123 (May 12, 2020) and G.T. v. Division of Medical Assistance & Health Services and Gloucester Board of Social Services, No. HMA 7855-12, final decision (Dec. 19, 2012) when finding appellant ineligible for Medicaid; and (8) the Assistant Commissioner's "actions constitute improper rulemaking, violating Medicaid statutes and administrative procedure."

8

II.

"This court's review of [the Division's] determination is ordinarily limited." C.L. v. Div. of Med. Assistance & Health Servs., 473 N.J. Super. 591, 597 (App. Div. 2022). "An administrative agency's decision will be upheld 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 349 (App. Div. 2010) (alteration in original) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)).

"Deference to an agency decision is particularly appropriate where interpretation of the [a]gency's own regulation is in issue." I.L. v. N.J. Dep't of Hum. Servs., Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006). "Nevertheless, we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" C.L., 473 N.J. Super. at 598 (quoting R.S., 434 N.J. Super. at 261). Moreover, "[i]f

9

our review of the record shows that the agency's finding is clearly mistaken, the decision is not entitled to judicial deference." A.M. v. Monmouth Cnty. Bd. of Soc. Servs., 466 N.J. Super. 557, 565 (App. Div. 2021) (first citing H.K. v. N.J. Dep't of Hum. Servs., 184 N.J. 367, 386 (2005), then citing L.M. v. Div. of Med. Assistance & Health Servs., 140 N.J. 480, 490 (1995)). The same is true "where an agency rejects an ALJ's findings of fact." Ibid.

"[I]t is well recognized that 'Medicaid, enacted in 1965 as Title XIX of the Social Security Act, [42 U.S.C. §§ 1396 to 1396w-8], is designed to provide medical assistance to persons whose income and resources are insufficient to meet the costs of necessary care and services.'" G.C. v. Div. of Med. Assistance & Health Servs., 249 N.J. 20, 26 (2021) (quoting Atkins v. Rivera, 477 U.S. 154, 156 (1986)); see also 42 U.S.C. § 1396-1. "Participation in the Medicaid program is optional for states; however, 'once a State elects to participate, it must comply with the requirements' of the federal Medicaid Act and federal regulations adopted by the Secretary of Health and Human Services in order to receive federal Medicaid funds." D.C. v. Div. of Med. Assistance & Health Servs., 464 N.J. Super. 343, 354 (App. Div. 2020) (quoting Harris v. McRae, 448 U.S. 297, 301 (1980)).

Pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5, the Division is responsible for administering Medicaid in our State. N.J.S.A. 30:4D-4. The Division is required to manage the State's Medicaid program in a fiscally responsible manner. See Dougherty v. Dep't of Hum. Servs., Div. of Med. Assistance & Health Servs., 91 N.J. 1, 4-5, 10 (1982) (remanding back to the agency to consider the public interest and the "increasing social demands for limited public resources"). "[T]o be financially eligible, the applicant must meet both income and resource standards." In re Est. of Brown, 448 N.J. Super. 252, 257 (App. Div. 2017); see also A.M., 466 N.J. Super. at 566 ("Because Medicaid funds are limited, only those applicants with income and non-exempt resources below specified levels may qualify for government-paid assistance."); N.J.A.C. 10:71-3.15; N.J.A.C. 10:71-1.2(a).

"Individuals qualify for MLTSS by meeting established Medicaid financial requirements . . . contained in N.J.A.C. 10:69, 70, 71, or 72." N.J.A.C. 10:60-6.2(a). A local County Welfare Agency (CWA) "exercise[s] direct responsibility in the application process to . . . [r]eceive applications." N.J.A.C. 10:71-2.2(c)(2). A CWA is defined as "that agency of county government, that is charged with the responsibility for determining eligibility for public

assistance programs, including [Aid to Families with Dependent Children]-Related Medicaid, Temporary Assistance to Needy Families (TANF), the Food Stamp Program, NJ FamilyCare and Medicaid." N.J.A.C. 10:71-2.1. CWAs are charged with evaluating an applicant's eligibility for Medicaid benefits. N.J.S.A. 30:4D-7; N.J.A.C. 10:71-2.2(a); N.J.A.C. 10:71-3.15(a).

"The process of establishing eligibility involves a review of the application for completeness, consistency, and reasonableness." N.J.A.C. 10:71-2.9. Applicants must provide the CWA with specific verifications, which are identified for the applicant. See N.J.A.C. 10:71-2.2(e)(2). The CWA is responsible for "[a]ssisting [an] applicant in exploring their eligibility for assistance," N.J.A.C. 10:71-2.2(c)(3), and "[m]aking known to the applicant the appropriate resources and services both within the agency and the community, and, if necessary, assist in their use," N.J.A.C. 10:71-2.2(c)(4). The applicant is required to "complete, with the assistance from the CWA if needed, any forms required by the CWA as a part of the application process." N.J.A.C. 10:71-2.2(e)(1). While the applicant is "the primary source of information," the CWA is responsible for making "the determination of eligibility and to use secondary sources when necessary, with the applicant's knowledge and consent." N.J.A.C. 10:71-1.6(a)(2). The applicant is responsible for cooperating fully with the

verification process if the CWA has to contact the third-party in reference to verifying the value of the applicant's resources. N.J.A.C. 10:71-4.1(d)(3)(i). The agency may perform a collateral investigation to "verify, supplement or clarify essential information." N.J.A.C. 10:71-2.10(b).

## III.

We first address appellant's argument that the Assistant Commissioner erroneously determined her gross monthly income was $8,933.45 and the daily medical expense rate at Sunnyside. Specifically, appellant contends the Assistant Commissioner should have excluded appellant's pension and annuity income, which was deposited into an irrevocable qualified income trust in compliance with 42 U.S.C. § 1396p(d)(4)(B), when reviewing her Medicaid eligibility, because that income was excludable from the gross monthly income calculation for Medicaid eligibility. Appellant posits that her gross monthly income would have been below the MLTSS Medicaid income eligibility cap if the Assistant Commissioner correctly excluded her pension and annuity income.

"Normally, we do not consider issues not raised below at an administrative hearing." In re Stream Encroachment Permit, Permit No. 0200-04-0002.1 FHA, 402 N.J. Super. 587, 602 (App. Div. 2008) (citing Bryan v. Dep't of Corr., 258 N.J. Super. 546, 548 (App. Div. 1992)). Appellate courts generally refrain from

considering an appellant's arguments not advanced and fully litigated below because it is unfair to the adverse party and limits a full review. See Abbott v. Burke, 119 N.J. 287, 390 (1990). Accordingly, we decline to consider issues not raised below when an opportunity for such a presentation was available unless the questions raised on appeal concern jurisdiction or matters of great public interest. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); see also Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (recognizing claims that are not presented to a trial court are inappropriate for consideration on appeal).

Here, appellant failed to dispute her gross monthly income before the County or ALJ, a fact not noted in appellant's brief. See R. 2:6-2(b) (requiring when a point was "not presented below a statement to that effect shall be included in parenthesis in the point heading"). The County's denial decision specifically stated appellant's gross income was $8,933.45. Thus, the County notified appellant of its gross income determination and afforded an opportunity to challenge the decision before the ALJ. A review of the hearing transcript and appellant's post-trial summation brief to the ALJ confirms appellant advanced no arguments regarding the County's determination of appellant's gross income.

For the sake of completeness, we note the ALJ's decision specifically indicated there were no facts presented that put appellant's monthly gross

income, which "included $2,314.10 in Social Security benefits, $1,393.64 from a Public Employees' Retirement System pension[,] and an annuity for $5,285.71," in dispute. It is uncontroverted that before its denial of appellant's application, the County had sent appellant a verification letter requesting records regarding her trust and financial transactions. Appellant's failure to timely contest the County's gross income determination precluded the County a fair opportunity to request further financial information and funding verification, deprived the County from litigating the issues, and prevented the ALJ from addressing the issues on the merits at the hearing. For these reasons, we discern no reason to disturb the Assistant Commissioner's final decision.

We next consider appellant's argument that the Assistant Commissioner erred in her determination of appellant's daily medical expenses at Sunnyside. It is undisputed that Sunnyside provided appellant with necessary medical services, and the County is the agency charged with determining appellant's Medicaid eligibility for the MLTSS program benefits. We are unpersuaded by appellant's contention that the Assistant Commissioner's determination of appellant's daily medical costs of $75 per day at Sunnyside was: unsupported by credible evidence in the record; based on misinterpreted information; and was arbitrary, capricious, and unreasonable. After a review of the record, we

discern no error in the Assistant Commissioner's adoption of the ALJ's findings and independent determination that Sunnyside's administrator's letter and invoices established that appellant's "medical cost was $75 per day."

Appellant does not dispute that while Medicaid applicants may be eligible for assisted living facility medical care expenses under the MLTSS program, they must pay for room and board themselves. See 42 C.F.R. § 441.310(a)(2) (prohibiting expenditure for "cost of room and board" unless an exception applies). When determining appellant's daily medical expenses, the Assistant Commissioner acted within her discretion in relying upon the supervisor's testimony regarding her conversation with Sunnyside's administrator, Sunnyside's confirming letter, and its invoices. It is clear in administrative proceedings that the parties are not bound by the formalities of the Rules of Evidence. N.J.A.C. 1:1-15.1(c), -15.5 (a) to (b); see also Weston v. State, 60 N.J. 36, 51 (1972) (explaining that "[h]earsay may be employed to corroborate competent proof, or competent proof may be supported or given added probative force by hearsay testimony," but "for a court to sustain an administrative decision, which affects the substantial rights of a party, there must be a residuum of legal and competent evidence in the record to support it"). All of Sunnyside's invoices specifically stated that appellant's "[a]ssistance with [d]aily [l]iving"

16

cost was $40 per day, and her "[m]edication [m]anagement" cost was $35 per day, which corroborated Sunnyside's administrator's statement and confirming letter that stated appellant's daily medical expenses totaled $75.

Appellant has cited no authority for her contention that the County was required to accept Sunnyside's full daily rate charged, which included room and board, in determining her Medicaid eligibility. Stated another way, appellant has cited no legal authority supporting her contention that the County was required to accept the entirety of her daily costs at Sunnyside as attributable solely for medical expenses. Further, her assertion that there was no requirement "to provide an itemized breakdown of [medical expense] charges" is in direct contradiction with N.J.A.C. 10:71-2.2(e)(2)'s requirement for applicants to assist "in securing evidence that corroborates [their] statements."

Finally, we discern no error in the Assistant Commissioner's reference to C.M. v. Middlesex County Board of Social Services, 2020 N.J. AGEN LEXIS 123 (May 12, 2020) and G.T. v. Division of Medical Assistance & Health Services and Gloucester Board of Social Services, HMA 7855-12, final decision (Dec. 19, 2012). The Assistant Commissioner made sufficient independent findings substantially supported by the record. Appellant's argument that the Assistant Commissioner's final decision constituted improper rulemaking is also

without merit. The Assistant Commissioner's exclusion of Sunnyside's room and board costs, as an assisted living facility, and determination of medical expenses per day based on the evidence submitted was in keeping with the Division's policy position and in accordance with federal law. See 42 U.S.C. § 1396n(d)(1) (allowing an authorized state Medicaid plan to "include as 'medical assistance' . . . part or all of the cost of home or community-based services (other than room and board) . . . provided pursuant to a written plan of care" to individuals over sixty-five years old); see also Div. of Med. Assistance & Health Servs., Medicaid Commc'n No. 18-10, Pre-eligibility Medical Expenses (PEME) for Nursing Homes and Assisted Living Facilities 2 (2018) ("Medicaid does not cover room and board for individuals living in [assisted living] facilities and any cost associated with room and board cannot be included in the claim for PEME."). For these reasons, we discern no bases to disturb the Assistant Commissioner's final decision.

To the extent that we have not addressed appellant's remaining contentions, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18