**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0701-23

M.T.[1],

    Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES and UNION COUNTY
DIVISION OF SOCIAL SERVICES,

    Respondents-Respondents.

_____

Submitted March 4, 2025 – Decided August 18, 2025

Before Judges Bishop-Thompson and Augostini.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

Michael Heinemann, attorney for appellant.

Matthew J. Platkin, Attorney General, attorney for respondent Division of Medical Assistance and Health

---

[1] We use initials to protect the petitioner's and other individuals' privacy interests. R. 1:38-3(d)(10).

Services (Melissa H. Raksa, Assistant Attorney General, of counsel; Francis X. Baker, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner M.T. appeals from an August 18, 2023 final agency decision of the New Jersey Department of Human Services, Division of Medical Assistance and Health Services (DMAHS), denying her Medicaid benefits application because the requested verifications were not timely provided to permit the Union County Division of Social Services (UCDSS) to make an eligibility determination. For the following reasons, we vacate the decision and remand for further proceedings.

I.

Petitioner is a patient in a long-term skilled nursing facility. Before filing a Medicaid application on petitioner's behalf, B.W.—who was designated as petitioner's authorized representative (DAR) from Senior Planning Services—made several requests for information related to accounts and verifications at JP Morgan Chase (Chase) and Columbia Bank, as well as a Zelle account.

In a September 19, 2022 letter, identified as a "[second] attempt," to Chase, the DAR requested the monthly bank statements from May 1, 2017, to

A-0701-23

the closing of Chase account number 5443 (account 5443) required by UCDSS.[2] The DAR also requested that Chase provide an official letter addressing whether that account 5443 was associated with petitioner's social security number. Three days later, in a September 22, 2022 letter, the DAR sent an additional expedited request to Chase seeking the balance as of the then "current date." Both letters expressly stated: "PLEASE EXPEDITE DUE TO A TIGHT MEDICAID DEADLINE."

In a third letter to Chase, dated September 28, 2022, the DAR stated:

> We have been informed by Chase that our client above does not have an account ending in 5543.[3] Please provide a letter on company letterhead stating this information. Please include the client's name and [social security number] on the letter. Medicaid needs a no-account letter. The letter also stated: "This request is needed urgently for Medicaid!! Please expedite!!! Deadline is this FRIDAY 09/30/2022! SECOND ATTEMPT.

Chase's response, dated September 30, 2022, stated that a "good faith" search for the information or records had been conducted related to petitioner.

---

[2] The record on appeal does not contain any correspondence to Chase prior to September 19, 2022.

[3] The DAR's response incorrectly identified the Chase account as 5543. However, we discern from the record that the response was related to account 5443.

A-0701-23

However, "[they] were unable to locate records responsive to the subpoena and/or request."

That same day, the DAR responded to UCDSS with additional information to complete petitioner's application. On behalf of petitioner, the DAR verified that: (1) the proceeds from the sale of the family home were deposited into an unknown bank account and a portion of the funds may be subject to a penalty; (2) the savings account history for two Columbia Bank account number 7738 (account 7738)—closed on February 7, 2018 and number 3351 (account 3351)—closed on November 20, 2017—had been previously submitted; (3) petitioner's divorce decree was requested in August 2022 and New York Vital Statistics had 100 business days to provide a copy, which would be submitted upon receipt; and (4) the September 30, 2022 letter from Chase that petitioner was not the owner of account 5443, the current balance was not listed, and these transactions were subject to a penalty. The DAR also asked for clarification regarding additional information about an alleged $6,000 deposit made on December 20, 2018, to Chase account 6413 because it was not reflected on the account statement.

Also, on September 30, 2022, the DAR filed an application for Medicaid benefits on petitioner's behalf with the UCDSS and provided several documents

A-0701-23

in support of the application. UCDSS sent a "request for information" letter, dated October 17, 2022, seeking information related to bank accounts, property, and life insurance policies. UCDSS did not acknowledge petitioner's response; instead, it sought the following additional information and verifications, which required a response by October 31, 2022:

- Divorce decree.

- Bank statements and check images to establish proof where the proceeds from the sale of the Roselle home were deposited.

- Columbia Bank statements: (1) September 1, 2017 "[c]losure bank statements and check images" for account [] 7738; (2) September 1, 2017 "[c]losure bank statements and check images" for account [] 3351; and (3) September 1, 2017 "[c]losure bank statements and check images" for account [] 2029. The previous paperwork provided was not sufficient because it does not display the client's name and address and was not on official letterhead. Additionally, the "online screenshots" were not acceptable. A $7,684.74 withdrawal from account [] 3351 on December 20, 2017, and proof of deposit.

- Geico premium: Information regarding the payment of a Geico automobile insurance premium, as well as the title, registration, and odometer reading for the vehicle. If sold, then a bill of sale from the Motor Vehicle Commission. If the Geico policy was related to life insurance, a letter from Geico identifying the owner, insured, face value, and cash value as of September 1, 2022.

A-0701-23

- Zelle payments[4]: (1) to T.O., a signed and dated letter from T.O. with current contact information concerning the Zelle payments from Chase account 6413 to her and the frequency of those payments; (2) two $600 Zelle payments into Bank of America (BOA) account [] 5409 (account 5409) from petitioner to herself;[5] (3) a $2,000 Zelle payment on November 17, 2017 into []5409.

- BOA account 5409: (1) numerous transfers between BOA account 5409 and an unknown bank account; (2) provide quarterly statements for BOA account 5409 from September 1, 2017, through September 1, 2022; (3) bank statement to show the source of a $1,500 deposit into BOA account 5409 on December 5, 2017.

- Chase bank accounts: (1) a check image of the $702.65 deposit made into Chase account 6413 (account 6413) on August 1, 2019; (2) quarterly statements for Chase account 5443 because the letter sent by Chase did not "clearly state the account number." If petitioner was not the owner of the account, provide a statement of proof of account ownership and a penalty would be assessed; (3) identify transfers from Chase account 6413 to "unknown" checking account 5443: December 20, 2017 for $4,000; February 8, 2018 for $10,500; and February 22, 2018, for $4,000; (4) a $12,958.48 deposit into Chase account 6413 and the deposit slip noted $6,958.48 were funds from Columbia Bank, and provide bank statements for Columbia Bank and proof of the source of the additional $6,000.

---

[4] Zelle is an electronic method of sending and receiving money to an email address or United States mobile number through a bank or credit union's mobile application or online banking. See Zelle, https://www.zellepay.com (last visited August 7, 2025).

[5] The letter referenced BOA bank statements were provided to UCDSS; however, these statements are not contained in the appendix.

A-0701-23

- Recent billing statements for the Target, GAP, and Sears credit cards.

On October 31, 2022, the DAR responded that the divorce decree had been requested and should be received within sixty to ninety business days and would be submitted upon receipt. The response also stated the petitioner's family did not know where the proceeds of the real estate sale had been deposited but acknowledged the funds were considered a transfer and subject to a penalty.

As to the Columbia Bank accounts, the DAR provided all statements and check images for account 2029. The DAR also attached an October 21, 2022 letter from Columbia Bank that the 7738 and 3351 accounts were "products that [did] not produce statements." Columbia asserted that the "transaction history that was previously sent was a valid statement alternative to display transaction history for both accounts." Columbia also stated that account 3335 was not a "valid account number" and provided the December 20, 2017 closeout withdrawal for account 3351.

In regard to the Zelle payments to T.O., the DAR stated she had been nonresponsive and acknowledged those transfers would be subject to a penalty. Regarding the $1,500 deposit to BOA account 5409, the DAR stated that information had been requested and would be submitted upon receipt. The response also noted that the Chase statement for account 6413 reflected the

7

confirmation for the various Zelle payments and deposits. Lastly, the DAR stated the Gap and Sears credit cards, as well as the Target debit card, were closed.

On November 14, 2022, UCDSS sent a second request for information, renewing the request for the same information and directed the DAR to respond by November 28, 2022. This request, however, failed to acknowledge the DAR's October 31, 2022 response.

In the response dated November 28, 2022, the DAR reiterated the information provided in the October 31, 2022 responses regarding Columbia Bank accounts 7738 and 3351 and requested clarification on what additional information would be acceptable. As to the closed credit cards, the DAR explained that petitioner did not have access to those closed accounts to obtain verification. The DAR also stated that the statements regarding the unknown Chase account 5443 showed that there were internal transfers to this account and "the account [did] not belong to [Chase]." This letter also stated that "[a]s per the family, this account may belong to a son who has estranged himself from the family and there is no way to contact him."

On December 9, 2022, UCDSS denied petitioner's application based on the DAR's failure to provide the following verifications as requested in the

October 17 and November 14, 2022 letters: (1) the closure bank statements and check images for Columbia Bank account 7738 and 3351 because the "previous paperwork" submitted was insufficient; (2) the letter from Chase regarding account 5443 was not acceptable as it did not identify the account number, the "self-attestation" was not acceptable, and no information regarding ownership was provided regardless of whether the account was held at Chase; (3) as to the numerous Zelle payments and transfers to an unknown account, petitioner failed to provide records for the unknown account; and (4) self-attestation was "not sufficient" to establish the accounts were closed, and the "most recent" billing statements for Target, Gap, and Sears were required. UCDSS did not respond to the DAR's request for clarification.

Petitioner contested the denial of her application, and the matter was transmitted to the Office of Administrative Law (OAL) for a fair hearing. A one-day telephone hearing was held before an Administrative Law Judge (ALJ).

The DAR testified on behalf of petitioner. In regard to the Columbia Bank accounts, the DAR stated that she did not take an "online screenshot" of the account history. She explained the transaction history was provided by Columbia Bank in response to her written request. The DAR typed the bank account numbers where those withdrawals from account 6413 were deposited—

"TO COLUMBIA 2029" and "TO CHASE 6413."  The text was highlighted and typed in capital letters with a different font.

As to account 5443, the DAR testified that the September 30, 2022 letter from Chase confirmed petitioner was not the owner of that account because Chase was unable to locate any records. The DAR also testified that petitioner's sister knew of the existence of the account and told the DAR that the account may have belonged to petitioner's son, who was estranged from the family, which was made known to UCDSS.

C. G., UCDSS Supervisor in the Adult Medicaid Department, testified that she did not process petitioner's application but was aware of two outstanding financial issues:  the three transactions to the unknown Chase account 5443 and the Columbia Bank documentation for account 7738 and 3351.  In regard to the Columbia history transaction, C.G. explained that UCDSS would have accepted the transaction history and the official letter from Columbia Bank had the transaction history not been altered by the typed notations.  She further explained UCDSS would have been satisfied with a handwritten notation, which would have been recognized as notes made by the DAR.

As to Chase account 5443, C.G. testified that petitioner did not submit a sufficient response from Chase because the letter did not expressly state that she

10

was not the owner of the account, did not identify accounts that may have been closed, and did not provide a letter stating the account belonged to another individual. On cross-examination, C.G. acknowledged that the DAR had produced five years of statements from bank accounts owned by petitioner. She testified that based on those statements, "there was nothing indicating that [petitioner] may have [had] an additional account." Moreover, UCDSS's internal system—asset verification system (AVS)—did not reveal any additional Chase accounts.

On May 26, 2023, the ALJ issued an initial decision. The ALJ framed the issue as whether UCDSS should have denied petitioner's application based on her failure to supply the requested information from Columbia Bank or for not providing the requested information concerning Chase account 5443. In a footnote, the ALJ stated that the UCDSS "concede[d] that the other reasons listed in the December 9, 2022 decision, specifically the information requested concerning certain Zelle payments, as well as the billing statements for the closed credit cards, should not have been included in the denial letter."

The ALJ reversed UCDSS's denial of petitioner's Medicaid application and directed the assessment of any appropriate transfer penalties. The ALJ concluded that the information provided by petitioner regarding the Columbia

11

Bank accounts was "responsive" to the request for information and the response "should not have formed a basis for the denial of [petitioner's] application." The ALJ further concluded that petitioner's application "should not have been denied for failing to provide any additional information concerning [Chase account 5443]. Rather, a transfer penalty should have been assessed for these three transfers."

On August 18, 2023, DMAHS issued its final agency decision, which rejected and reversed the initial decision issued by the ALJ. DMAHS determined that petitioner failed to provide the requested information, including a letter from Chase that she owned Chase account 5443, the online screenshot from Columbia Bank regarding account 7738 and 3351 was not acceptable, as it did not identify petitioner or the account holder, as well as information responding to six additional requests. DMAHS further determined petitioner was given fifty-three days to provide the requested documents, failed to request an extension to produce the documents, and there were no exceptional circumstances to warrant an extension.

II.

On appeal, petitioner raises two arguments for our consideration. She contends that the final agency decision was arbitrary, capricious, and

12

unreasonable and disregarded the ALJ's credibility determination. Petitioner also argues that the final agency decision violated her right to due process by disregarding the facts found at the OAL hearing.

A court's review of an agency's determinations is limited. C.L. v. Div. of Med. Assistance & Health Servs., 473 N.J. Super. 591, 597 (App. Div. 2022) An agency determination on the merits "will be upheld 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). The burden of demonstrating an arbitrary, capricious, or unreasonable agency action rests on the party opposing the agency's action. See E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 349 (App. Div. 2010).

"We review a decision made by an administrative agency entrusted to apply and enforce a statutory scheme under an enhanced deferential standard." E. Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022). "Nevertheless, we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" C.L., 473 N.J. Super. at 598 (quoting R.S., 434 N.J. Super. at 261).

"[I]f our review of the record shows that the agency's finding is clearly mistaken, the decision is not entitled to judicial deference." A.M. v. Monmouth Cnty. Bd. of Soc. Servs., 466 N.J. Super. 557, 565 (App. Div. 2021). Likewise, we afford no judicial deference "where an agency rejects an ALJ's findings of fact . . . ." Ibid.

Further, agencies are "not at liberty to simply substitute its judgment for that of the ALJ's." Cavalieri v. Bd. of Trs. of Pub. Emps. Ret. Sys., 368 N.J. Super. 527, 534 (App. Div. 2004). Instead, when rejecting or modifying an ALJ's findings of fact, "the agency head must explain why the ALJ's decision was not supported by sufficient credible evidence or was otherwise arbitrary." Ibid.

A.     Final Agency Decision.

New Jersey participates in the federal Medicaid program under the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5. In New Jersey, eligibility for Medicaid is determined by the Commissioner of the Department of Human Services. See N.J.S.A. 30:4D-7. DMAHS is the agency within the Department of Human Services that administers the Medicaid program, N.J.S.A. 30:4D-5; N.J.A.C. 10:49-1.1(a), and is responsible for

safeguarding the interests of the New Jersey Medicaid program and its beneficiaries, N.J.A.C. 10:49-11.1(b).

UCDSS, the county welfare agency, evaluates Medicaid eligibility. N.J.S.A. 30:4D-7(a); N.J.A.C. 10:71-.2.2(a) to -3.15. Eligibility must be established based on the legal requirements of the program. N.J.A.C. 10:71-3.15. Thus, UCDSS is required to verify the equity value of resources through appropriate and credible sources. If an applicant's resource statements are questionable or the identification of resources is incomplete, "the [county welfare agency] shall verify the applicant's resource statements through one or more third parties." N.J.A.C. 10:71-4.1(d)(3).

Additionally, county welfare agencies review Medicaid applications "for completeness, consistency, and reasonableness." N.J.A.C. 10:71-2.9. Applicants must provide verifications that are identified, and "[a]ssist the [county welfare agency] in securing evidence that corroborates his or her statements." N.J.A.C. 10:71-2.2(e)(2).

Petitioner argues that DMAHS's findings are in "direct contradiction" to the ALJ's factual findings. She notes DMAHS's argument that further evidence related to Chase account 5443 was introduced at the fair hearing "[did] not negate [p]etitioner's responsibility to timely comply with UCDSS's verification

requests," although the evidence was not identified. She also argues that the final decision contradicts C.G.'s testimony, as well as the ALJ's findings of fact. We are persuaded by petitioner's argument.

Here, in the final agency decision, DMAHS rejected the factual findings made by the ALJ. Rather than explain why the ALJ's decision was not supported by sufficient credible evidence or was otherwise arbitrary, DMAHS reiterated the explanations presented in its denial letter.

We first address the two discrete contested issues regarding Chase account 5443 and Columbia account 7738 and 3351. The record does not support DMAHS's argument that petitioner failed to provide sufficient verifications in response to two information requests.

In regard to Chase account 5443, DMAHS argues that unidentified additional document produced at the OAL hearing did not negate [petitioner's] responsibility to timely reply with UCDSS's verification requests. It further argues that the letter from Chase was insufficient to verify petitioner was not the account owner because the letter did not identify the account number, petitioner's name, or address. Nor does DMAHS explain how the ALJ's determination that petitioner was not the holder of the account was unreasonable.

We are satisfied that there is sufficient evidence in the record that petitioner was not the owner of account 5443 based on the September 30, 2022 letter from Chase, C.G.'s testimony that DMAHS's AVS did not reveal any additional accounts other than 6413, and UCDSS's acknowledgement that 5543 may not have been a Chase account, which was later identified as an "unknown account." Therefore, there is substantial evidence to support the ALJ's finding that "it [was] reasonable to assume that [petitioner] was never the holder of this Chase account."

DMAHS posits the argument regarding Columbia Bank account 7738 and 3351 on the same premise—"previous paperwork provided [was] not sufficient because it does not display the client's name and address, nor is it on bank letter head." The record shows otherwise. Columbia Bank validated both accounts and provided the transaction history because those accounts did not produce statements. Moreover, C.G. explained the transaction history would have been sufficient but for the typed notation, which UCDSS considered an alteration of the original document.

Lastly, petitioner asked for clarification concerning acceptable verification that she was not the account owner of Chase account 5443 and to show the account history for the two Columbia Bank accounts. UCDSS neither

responded to the DAR's request for clarification nor informed her that handwritten notations on the transaction history would have been acceptable.

Based on these uncontroverted facts, we conclude DMAHS erred in reasoning that petitioner did not produce sufficient information for the agency to determine her financial eligibility for the contested bank accounts. We also add that at the fair hearing, DMAHS conceded the Zelle payments, as well as the closed debit and credit card accounts should not have been a part of the basis for the denial of petitioner's application; and therefore, the ALJ made no findings of facts or conclusions of law as to these issues. To renew those reasons as a basis for a denial in the final agency decision contravened the judgment of the ALJ. See Cavalieri, 368 N.J. Super. at 534.

Moreover, the agency improperly discounted competent evidence in the record and substituted its own judgment and credibility determination, which conflicted with the findings of the ALJ. Accordingly, the DMAHS's final decision was arbitrary, capricious, and unreasonable. See In re Stallworth, 208 N.J. 182, 194 (2011) (explaining that an agency's action is arbitrary, capricious, or unreasonable when the record does not contain substantial evidence supporting a finding upon which the agency's decision is based).

Accordingly, we vacate the decision and remand for further proceedings. On remand, the petitioner shall produce any documents that were previously requested if she has not already done so. DMAHS shall consider the presented evidence to determine petitioner's eligibility, and make the findings required by N.J.S.A. 52:14B-10(c).

B. Fair Hearing.

Petitioner contends that the final agency decision violated her right to due process by denying her a fair hearing. She further argues that she was deprived of her due process rights because DMAHS based its denial of benefits on items identified as missing in the denial letter, which were not addressed during the fair hearing.

"[D]ue process requires 'the opportunity to be heard "at a meaningful time and in a meaningful manner."'" Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 260 (App. Div. 2006) (quoting Mathews v. Eldridge, 424 U.S. 319, 333 (1976)). Further, the Medicaid Regulations provide a Medicaid applicant the right to a fair hearing to dispute a denial of an application. N.J.A.C. 10:71-8.4.

DMAHS acknowledged that the Initial Decision only discussed the Columbia Bank transfers and the unknown checking account, however, it found that it was "unclear what requests UCDSS 'concedes should have not been

included in the denial letter' and what other requests were still outstanding at the time of the denial." This argument is not supported by the record.

The hearing transcript shows that the witnesses' testimony was limited to the account 5443 and the two Columbia accounts. Additionally, DMAHS did not object to petitioner's remark during summation that UCDSS conceded there were only two reasons for the denial: the three transactions from Chase account 6413 to the unknown 5443 and the Columbia Bank statements. We conclude petitioner's due process rights were not violated.

Reversed, vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

20

A-0701-23